IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICHAEL J. MATLOCK, No. B08144, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | CIVIL NO. 15-cv-1124-NJR |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS, | ) | |
| GOVERNOR BRUCE RAUNER, | ) | |
| DONALD STOLWORTHY, | ) | |
| BILLIE W. GREER, | ) | |
| KIRTIS HUNTER, | ) | |
| BEVERLY ROCKWELL, | ) | |
| TIMOTHY QUIGLY, | ) | |
| GIA WRIGHT, and | ) | |
| DWAYNE DURHAM, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Michael Matlock is currently incarcerated at Shawnee Correctional Center ("Shawnee") in Vienna, Illinois. (Doc. 1.) Proceeding *pro se*, Matlock has filed a complaint pursuant to 42 U.S.C. § 1983 against several Shawnee and Illinois Department of Corrections ("IDOC") employees, alleging he was deprived of due process during the course of events related to his disciplinary and grievance hearings. (*Id.* at 3, 8.).

This matter is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review under § 1915A, the Court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is

frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief." For the reasons set forth below, Matlock's due process claim does not survive preliminary review.

## Background

According to the complaint, Matlock's due process deprivations arose after he was accused of jamming his prison cell door with an empty "sweet 'n spicy" plastic bag. (Doc. 1 at 4.) On November 4, 2013, Defendant Dwayne Durham, a Shawnee correctional employee, was securing cell doors on Matlock's wing. (*Id*. at 7, 8.) Upon attempting to close Matlock's cell door, Durham noticed that the door's lock was jammed by a plastic bag. (*Id.* at 7.) Both Matlock and his cellmate were fingered for jamming the door. Matlock's cellmate pleaded guilty. (*Id.* at 2.) Matlock maintained his innocence. (*Id.*) During his disciplinary hearing, however, Matlock was adjudged guilty of "damage or misuse of property" and "violation of rules." (*See id.* at 8.) As a direct result of his administrative conviction, Matlock alleges he was placed in segregation for thirty days, terminated from his prison job, deprived of his state-owned television, denied the return of lost good time credit, and denied transfer to a minimum security facility. (*Id.* at 3.)

While he was serving his time in segregation, Matlock instituted grievance proceedings in an attempt to upset his conviction. (*Id.* at 2.) The complaint alleges he sent a memorandum to Defendant Timothy Quigley, chairperson of the Adjustment Committee ("the Committee"), requesting he be permitted to call an eye witness to the incident during the Committee's hearing on his grievance. (*Id.*) The memorandum contained the prison cell number of the witness; Matlock was unable to secure any other identification while in segregation. (*Id.*) On the day of the hearing, however, Defendant Quigley did not permit Matlock to call his witness because

Matlock failed to submit the name and number of the witness prior to the hearing. (*Id.*) The Committee denied Matlock's grievance.

Matlock filed a timely grievance before the grievance officer while he was still in segregation. Because he was still in segregation, he was again unable to procure the name and number of his witness. When he was released, however, he secured the witness's name, number, and signed statement of the incident and sent this information to the grievance officer and the Administrative Review Board (the "Board"). (*Id.*) Both the grievance officer and the Board dismissed Matlock's grievance. (*Id.* at 3.)

Matlock seeks punitive damages and the expungement of his conviction. (*Id.*) He names as defendants those Shawnee and IDOC officials who were involved in the events related to his disciplinary and grievance hearings, alleging he was deprived of his right to due process when he was convicted despite his plea of "not guilty," and when a possible eyewitness was ignored during Defendant Quigley's investigation and Matlock's disciplinary and grievance hearings. (*Id.* at 1, 3.) Matlock also sues Governor Bruce Rauner.

## Discussion

In *Muhammad v. Close*, 540 U.S. 749 (2004) (per curiam), the Supreme Court recognized that some prisoner civil rights cases straddle the line between what is actionable under § 1983, and what should instead be instituted in a habeas corpus action under 28 U.S.C. § 2254:

> Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action. Some cases are hybrids, with a prisoner seeking relief unavailable in habeas, notably damages, but on allegations that not only support a claim for recompense, but imply the invalidity either of an underlying conviction or of a particular ground for denying release short of serving the maximum time of confinement.

*Muhammad*, 540 U.S. at 750-51 (citations omitted). *Muhammad* is based on two related decisions: *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997). In *Heck*, the Supreme Court held that a § 1983 action for damages that "would necessarily imply the invalidity of [a plaintiff's] conviction or sentence" is not cognizable until the conviction or sentence has been reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus. 512 U.S. at 486-87. In *Balisok*, the Supreme Court held that claims that "necessarily imply the invalidity of the deprivation of [the prisoner's] good-time credits" are not actionable under § 1983 unless the prison disciplinary decision has been invalidated, even though the restoration of credits is not sought as a remedy. 520 U.S. at 646-68.

Matlock claims that, among other injuries, he was denied the return of lost good time credit as a result of his administrative conviction. (Doc. 1 at 3.) A finding in favor of Matlock in this § 1983 action would "necessarily imply" that the disciplinary action was invalid, and it would run afoul of *Heck* and its progeny. Thus his civil rights claim only ripens when the disciplinary decision is reversed or otherwise invalidated. *See Simpson v. Nickel*, 450 F.3d 303, 306-07 (7th Cir. 2006). Because the disciplinary decision remains in full force, Matlock's due process claim must be dismissed.

The dismissal shall be without prejudice, however, to Matlock raising his claim, should he wish to do so, if and when his disciplinary decision is overturned. Matlock may be able to challenge the decision in a federal habeas corpus case, after presenting his claim to the Illinois state courts. This includes appealing any adverse decision to the Illinois Appellate Court and the Illinois Supreme Court. The Illinois courts have recognized mandamus as an appropriate remedy to compel prison officials to award sentence credit to a prisoner. *See* 735 ILL. COMP. STAT. 5/14-

101 *et seq.*; *Turner-El v. West*, 811 N.E.2d 728, 733 (Ill. App. 2004) (citing *Taylor v. Franzen*, 417 N.E.2d 242, 247, *aff'd on reh'g*, 420 N.E.2d 1203 (Ill. App. 1981)). If Matlock successfully challenges his disciplinary decision regarding his loss of good time credit, he may then refile this civil rights action for damages.

### Disposition

**IT IS HEREBY ORDERED** that any and all claims against all Defendants are **DISMISSED** without prejudice.

If Plaintiff wishes to appeal this Order, he may file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. 4(A)(4). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockish*, 133 F.3d 464, 467 (7th Cir. 1998). A timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.[1] FED. R. APP. 4(a)(4).

The Clerk's Office is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  November 4, 2015**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**

---

[1] A Rule 59(e) motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment. FED. R. CIV. P. 59(e).